UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| CYNTHIA PITTMAN, Individually and On Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>   v.<br><br>UNUM GROUP, RICHARD P. MCKENNEY, JOHN F. MCGARRY, and DANIEL J. WAXENBERG,<br><br>        Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff Cynthia Pittman ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Unum Group ("Unum" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Unum; and (c) review of other publicly available information concerning Unum.

## NATURE OF THE ACTION AND OVERVIEW

1. This is a class action on behalf of persons and entities that acquired Unum securities between January 31, 2018 and May 2, 2018, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2. Unum claims to provide financial protection benefits in the United States and the United Kingdom. The Company's products purportedly include disability, life, accident, critical illness, dental and vision, and other related services.

3. On May 1, 2018, after the market closed, Unum issued a press release entitled "Unum Group Reports First Quarter 2018 Results." Therein, the Company, reported that its first quarter 2018 loss ratio for its long-term care business was a disappointing 96.6%, compared to only 88.6% for the first quarter of 2017. The first quarter 2018 loss ratio also far exceeded the Company's earlier-stated expectation of 85-90%.

4. On May 2, 2018, the Company held a conference call to discuss its first quarter 2018 financial results. On the call, Defendant John F. McGarry ("McGarry"), the Company's Chief Financial Officer ("CFO") elaborated on the Company's disclosures in the May 1, 2018 press release, stating "[b]enefits experience this quarter was driven by new claim incidence that ran much higher than expected" and "the higher loss ratio this quarter was negatively impacted by a lower level of policy terminations."

5. On this news, the Company's stock price fell $8.12 per share, or nearly 17%, to close at $39.78 per share on May 2, 2018, on unusually heavy trading volume.

6. Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose: (1) that the Company was experiencing a higher claims incidence for its long-term care business; (2) that the Company was experiencing less favorable policy terminations in connection with its long-term care business; (3) that, as such, the Company's long-term care business loss ratio would reach the upper 90% range; and (4) that, as a result of the foregoing, Defendants' statements about Unum's business, operations, and prospects, including statements related to the Company's long-term care reserves and capital management plans, were materially false and/or misleading and/or lacked a reasonable basis.

7. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8. The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

9. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

10. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District. Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District. In addition, the Company's principal executive offices are in this Judicial District.

11. In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities

exchange.

## PARTIES

12. Plaintiff Cynthia Pittman, as set forth in the accompanying certification, incorporated by reference herein, purchased Unum securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

13. Defendant Unum Group is incorporated in Delaware and its principal executive offices are in Chattanooga, Tennessee. Unum's common stock trades on the New York Stock Exchange ("NYSE") under the symbol "UNM."

14. Defendant Richard P. McKenney ("McKenney") was the Chief Executive Officer of Unum at all relevant times.

15. Defendant John F. McGarry was the Chief Financial Officer of Unum at all relevant times.

16. Defendant Daniel J. Waxenberg ("Waxenberg") was the Chief Accounting Officer of Unum at all relevant times.

17. Defendants McKenney, McGarry, and Waxenberg (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of Unum's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

18. Unum claims to provide financial protection benefits in the United States and the United Kingdom. The Company's products purportedly include disability, life, accident, critical illness, dental and vision, and other related services.

### Materially False and Misleading Statements Issued During the Class Period

19. The Class Period begins on January 31, 2018. On that day, the Company issued a press release entitled "Unum Group Reports Fourth Quarter 2017 Results." Therein, the Company, in relevant part, stated: "The interest adjusted loss ratio for the long-term care line of business was 93.1 percent in the fourth quarter of 2017 compared to 89.1 percent in the fourth quarter of 2016, primarily due to unfavorable policy terminations related to mortality experience."

20. On February 1, 2018, the Company held a conference call to discuss its Q4 2017 financial results. On the call, Defendant McGarry stated:

> The long-term care interest adjusted benefit ratio increased to 93.1% in the fourth quarter, compared to 89.1% in the year ago quarter. Risk results this quarter showed unfavorable policy terminations, primarily driven by unfavorable mortality experience. I'll remind you that at our December outlook meeting, we indicated that the long-term care ratio will likely exceed our prior expectation of a range of 85% to 90% over the near term. This quarter's results are in line with our revised expectations.

21. On February 21, 2018, the Unum filed its quarterly report with the SEC on Form 10-K for the year ended December 31, 2017. The Company's 10-K was signed by Defendants McKenney, McGarry, and Waxenberg, and reaffirmed the Company's long-term care loss ratio previously announced on January 31, 2018.

22. The above statements identified in ¶¶19-21 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose: (1) that the Company was experiencing a higher claims incidence for its long-term care business; (2) that the Company was

experiencing less favorable policy terminations in connection with its long-term care business; (3) that, as such, the Company's long-term care business loss ratio would reach the upper 90% range; and (4) that, as a result of the foregoing, Defendants' statements about Unum's business, operations, and prospects, including statements related to the Company's long-term care reserves and capital management plans, were materially false and/or misleading and/or lacked a reasonable basis.

### Disclosures at the End of the Class Period

23. On May 1, 2018, after the market closed, Unum issued a press release entitled "Unum Group Reports First Quarter 2018 Results." Therein, the Company, reported that its first quarter 2018 loss ratio for its long-term care business was a disappointing 96.6%, compared to only 88.6% for the first quarter of 2017. In greater part, the Company stated:

> The interest adjusted loss ratio for the long-term care line of business was 96.6 percent in the first quarter of 2018, compared to 88.6 percent in the first quarter of 2017, due primarily to higher claims incidence which was partially offset by favorable claim resolutions related to mortality experience. Also contributing to the higher interest adjusted loss ratio was less favorable policy terminations.

24. On May 2, 2018, the Company held a conference call to discuss its first quarter 2018 financial results. On the call, Defendant McGarry stated, in relevant part:

> The long-term care business line had a more challenging quarter as the interest adjusted benefit ratio increased to 96.6% in the first quarter this year compared to the favorable year-ago first quarter of 88.6%. Benefits experience this quarter was driven by new claim incidence that ran much higher than expected, which was partially offset by favorable claim resolutions due to mortality. In addition, the higher loss ratio this quarter was negatively impacted by a lower level of policy terminations. We continue to experience a high level of volatility in this line and expect it will continue in the future.

25. On this news, the Company's stock price fell $8.12 per share, or nearly 17%, to close at $39.78 per share on May 2, 2018, on unusually heavy trading volume.

### CLASS ACTION ALLEGATIONS

26. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that

Case 1:18-cv-00128-TAV-CHS Document 1 Filed 06/13/18 Page 6 of 16 PageID #: 6

5

acquired Unum securities between January 31, 2018 and May 2, 2018, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

27. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Unum's common stock actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class. Millions of Unum shares were traded publicly during the Class Period on the NYSE. As of April 30, 2018, Unum had 221,194,578 shares of common stock outstanding. Record owners and other members of the Class may be identified from records maintained by Unum or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

28. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

29. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

30. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b) whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Unum; and

(c) to what extent the members of the Class have sustained damages and the proper measure of damages.

31. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## **UNDISCLOSED ADVERSE FACTS**

32. The market for Unum's securities was open, well-developed and efficient at all relevant times. As a result of these materially false and/or misleading statements, and/or failures to disclose, Unum's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Unum's securities relying upon the integrity of the market price of the Company's securities and market information relating to Unum, and have been damaged thereby.

33. During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Unum's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading. The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Unum's business, operations, and prospects as alleged herein.

34. At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Unum's financial well-being and prospects. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects,

thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

35. Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

36. During the Class Period, Plaintiff and the Class purchased Unum's securities at artificially inflated prices and were damaged thereby. The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

37. As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Unum, their control over, and/or receipt and/or modification of Unum's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Unum, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

38. The market for Unum's securities was open, well-developed and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to

disclose, Unum's securities traded at artificially inflated prices during the Class Period. On February 1, 2018, the Company's stock price closed at a Class Period high of $53.28 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Unum's securities and market information relating to Unum, and have been damaged thereby.

39. During the Class Period, the artificial inflation of Unum's stock was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Unum's business, prospects, and operations. These material misstatements and/or omissions created an unrealistically positive assessment of Unum and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company stock. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

40. At all relevant times, the market for Unum's securities was an efficient market for the following reasons, among others:

(a) Unum stock met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b) As a regulated issuer, Unum filed periodic public reports with the SEC and/or the NYSE;

(c) Unum regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d) Unum was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and

certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

41. As a result of the foregoing, the market for Unum's securities promptly digested current information regarding Unum from all publicly available sources and reflected such information in Unum's stock price. Under these circumstances, all purchasers of Unum's securities during the Class Period suffered similar injury through their purchase of Unum's securities at artificially inflated prices and a presumption of reliance applies.

42. A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions. Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

43. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the

speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Unum who knew that the statement was false when made.

## FIRST CLAIM
### Violation of Section 10(b) of The Exchange Act and Rule 10b-5 Promulgated Thereunder
### Against All Defendants

44. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

45. During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Unum's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

46. Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Unum's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

47. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Unum's financial well-being and prospects, as specified herein.

48. Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Unum's value and

performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Unum and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

49. Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

50. Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Unum's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to

obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

51. As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Unum's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Unum's securities during the Class Period at artificially high prices and were damaged thereby.

52. At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Unum was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Unum securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

53. By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

54. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

### SECOND CLAIM
### Violation of Section 20(a) of The Exchange Act
### Against the Individual Defendants

55. Plaintiff repeats and re-alleges each and every allegation contained above as if

fully set forth herein.

56. Individual Defendants acted as controlling persons of Unum within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

57. In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

58. As set forth above, Unum and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a) Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b) Awarding compensatory damages in favor of Plaintiff and the other Class

members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

      (c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

      (d)     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: June 13, 2018

**BRANSTETTER STRANCH & JENNINGS PLLC**

/s/ J. Gerard Stranch, IV
J. Gerard Stranch, IV
Tricia Herzfeld
223 Rosa L. Parks Avenue, Ste. 200
Nashville, TN 37203
Telephone: 615-254-8801
Facsimile: 615-250-3937
gerards@bsjfirm.com
triciah@bsjfirm.com

**OF COUNSEL:**

**GLANCY PRONGAY & MURRAY LLP**
Lionel Z. Glancy (to be admitted *pro hac vice*)
Robert V. Prongay (to be admitted *pro hac vice*)
Lesley F. Portnoy (to be admitted *pro hac vice*)
Charles H. Linehan (to be admitted *pro hac vice*)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

**LAW OFFICES OF HOWARD G. SMITH**
Howard G. Smith (to be admitted *pro hac vice*)
3070 Bristol Pike, Suite 112
Bensalem, PA 19020
Telephone: (215) 638-4847
Facsimile: (215) 638-4867

*Counsel for Plaintiff*